We'll turn to the day calendar. I'm informed by the clerk that everyone is here who is to appear on the day calendar. We're here. Barrella v. Village of Freeport and Andrew Hardwick. May it please the court, Paul Rooney for Plaintiff Appellant Christopher Barrella. We are here on an appeal from a jury verdict in favor of the defendants in the second trial of this action. We seek a new trial because of four categories of errors that occurred in the district court. Admission of prejudicial testimony concerning a prior litigation our client was involved with. Exclusion of evidence concerning Mayor Hardwick's statements and actions that related directly to the alleged discrimination. Mayor Hardwick's discrimination against other employees of the Village of Freeport. And improper statements in openings and closings. Before we turn to that, I wanted to point out that at the defendant's urging in the first trial of this case, first appeal of this case, this court ruled that this case is factually very close and that the smallest error could result or should result in a new trial. And under the law of the case doctrine, that principle also applies to this appeal. That's a legal principle. What do you think controls this appeal? Well, Your Honor, we cited a case called Doe versus City Department of Social Services. In that case, there were two trials. After the first trial, the Second Circuit held that the trial court improperly granted judgment notwithstanding the verdict. There was a second trial.  And in that decision, the court ruled that it was bound by its first decision concerning the sufficiency of the evidence. That the sufficiency of the evidence had been presented in the first trial and that the second appeal was governed by that. By analogy, we say that this appeal is governed by the same determination in the first appeal, that the case was very close and that an error, presumably either way, could have tilted the balance. So when we're reviewing the court's errors in the second trial, that principle should also be applied here. The first error we'd like to discuss is the admission of the prior litigation. Our client was party to a litigation involving Nassau County and the giving of a civil service examination for police officers. And the trial court allowed him to be questioned on two occasions about that case. And the defendants capped off that questioning with a statement in their summation that said, and I quote, put an end once and for all to plaintiff's lies. Remember he failed the test, referring to the Nassau County test, and cried racism. This is what he does. He doesn't get something that he likes professionally and he cries racism. Put an end to it. Cry racism testimony came in because counsel for the plaintiff insisted that it come in, right? No, Your Honor. We made it crystal clear by filing a motion in limine and by objecting to the initial testimony that none of this should come in. But when they put it in, the cry racism wasn't part of it. And for the sake of completeness, counsel for the plaintiff said, read the whole thing. And now the cry racism stuff comes in. Haven't you created your own issue? We have not, Your Honor, because they tried to, all of the evidence is in at their insistence. They tried to start the cross-examination with yes or no and then continue with the question. And so we quite rightly pointed out you can't start with yes or no. But there was no question. Even before that, the error had been committed. But if they had it their way, the cry racism would not have come in, right? If they started with the answer. They would have been able to start instead, Your Honor, with a question that said yes or no, you were involved in a litigation where you alleged racism. So while technically, I suppose, it could have happened that way, but none of this testimony came in at our insistence. It was completely the defendant's idea. And even if you wanted to lop off that little piece, that doesn't change the statement that was made in the closing. And in Outley v. City of New York, this court ruled that if you question a plaintiff on two occasions and cap off that improper questioning with a summation just like that, it's reversible error. And so all you have to do is apply Outley v. City of New York and you can find that there should be a new trial. Additionally, the trial court refused to allow us to admit into evidence a written statement that Mayor Hardwick wrote saying that he had filed a lawsuit and attempted to produce a bill, have a bill introduced to the legislature, so he could pick a, quote, qualified minority applicant as chief of police. And the court refused to allow us to put that statement in. Under Henry v. Wyeth Pharmaceuticals, cited in our papers, this court ruled that refusing to allow a decision maker's statements, even if they didn't relate to the actual decision, their racially motivated statements, refusing to allow them in was error. So it was error here. And while in Henry it was not reversible error, that was not a case like this one, where it was so close that the slightest error could have tilted the balance. Additionally, the court refused to admit evidence that Mayor Hardwick had said in his campaign, brothers and sisters, referring to African Americans, we have to get our fair share, we're the majority, not the minority in this town, which is two-thirds minorities. And the court also refused to allow us to admit evidence, well, actually, the court allowed us to admit evidence, but then retroactively excluded evidence that Mayor Hardwick had attempted to take an African American police officer and promote her over every single sergeant, every single lieutenant in the whole place and make her second in command of the police department and made an announcement at a gala at how proud he was that he was going to have the first African American chief in his department. And the jury understood the significance of this. The court had let in a few questions, including the fact that he had tried to get her appointed to that position and asked for a readback. But when we went to do the readback, the judge refused to allow it and incorrectly told the jury that they had been told to disregard it. Doesn't allowing evidence of these other appointments in create the risk of a bunch of mini-trials about whether the mayor had good reason to appoint these people or not? It does, Your Honor, and I would concede that the mayor has, the mayor, the judge, the district judge, has the most discretion when it comes to admitting or excluding such evidence. But in this case, the defendants elicited testimony that the mayor had run on a promise, run on a promise that he was going to make the village workforce look like the village, which is two-thirds minorities. And in light of a statement like that, where he's admitting that he's going to take decisions with race on his mind that affect the entire workforce, it seems to me an abuse of discretion to forbid us to point to other decisions that he made, because they were allowed to present an argument, in essence, that he had some nice thoughts, that it was just, you know, good intentions. I'm sorry, my time is up, Your Honor. May I finish answering your question? Sure. And sort of present that he hadn't acted on it, and we were not allowed to show evidence that he had acted on it. Thank you, Your Honor. May it please the Court. My name is Keith Corbett. I'm an attorney at Harris Beach, and we represent the appellee village of Freeport in this matter. Respectfully, this court, when we were last here on appeal, really set forth in its decision a roadmap. This court went beyond just deciding the issues and actually called out six witnesses of the past trial and went into detail about the types of testimony that should not have been allowed the first time we were here. So this court said that you couldn't admit opinion testimony about why the mayor did what he did, right? You could not allow naked speculation. That's correct. And this judge kept out the statements of the mayor that might give some glimpse into his thought process and kept out statistical evidence. How is a plaintiff supposed to prove a case without one of those three things? The issue that this court picked up on in its decision, and the court on retrial before Judge Wexler picked up on, is the mayor has a sole authority to appoint the chief of police. All these other positions that plaintiff keeps wanting to bring up, the mayor does not appoint. They're appointed by a board of trustees. So the plaintiff wanted to have its cake and eat it, too. The mayor has no voice in that process. The mayor simply recommends, and he needs to get a majority of the board to go with him. And if you remember on the last case, a majority of the people who were put into positions of department heads were actually Caucasian. But the fact of the matter is, this court laid out exactly the types of testimony that should not be allowed. We overzealously argued that those six witnesses should not come back. The judge denied it. The six witnesses were allowed. They tried to try the same case again. And they tried to elicit the same testimony from Alfred Gross and Dwayne McGuire. What is a plaintiff supposed to put in proof of discrimination if not what other people think are the reasons, which this court says you can't put in, what the mayor says are reasons, and the statistics of it? Tell me how a plaintiff is supposed to put in a prima facie case of discrimination without any of those three types of evidence. Other than the mayor saying, I'm not appointing you because you're white. The plaintiff can rely on those types of evidence if it relates to the decision maker's decision to make. What I mean by that is this, the mayor, if they wanted to rely on the chief of police, the chief of police, and show instances where the mayor took some type of overt conduct, he said things, he saw things, or made maturation about that position, that's not what they did. They focused on other department heads. And I think Judge Cabranes in the decision last time pointed out, just because someone's trying to get political gain from speaking about things, does not in and of itself give you enough to just have full ray into the types of decisions that were made. And that's true, but isn't that evidence of why an appointment might or might not have been made? Isn't what the mayor says some evidence of why a village might have done or not done what it did or didn't do? I don't believe in this instance. I believe that the district court judge looked at the case, he saw who the decision makers were, when certain statements were made, the context and the content, and decided the probative value and certain instances outweighed the prejudicial value. I believe he was in the best decision to make that. And what he did here was when we came back, he limited them to the chief of police position, which is what Andrew Hardwick, the mayor, could actually appoint, and to instances where people actually heard Mayor Hardwick say things. They actually perception, their actual own knowledge. None of them had any knowledge whatsoever that Mayor Hardwick discriminated against anyone. He picked his friend. The overwhelming evidence showed that he knew Chief Bermudez. They'd known each other for 30 years. He didn't even know who Chris Borrello was. Not one person who came forward in both trials said they ever heard Mayor Hardwick say a disparaging thing about race. Not once. The issue here, though, is not whether you had enough to have a verdict in your favor. It's whether the plaintiff was prohibited from putting in evidence that was pertinent here, and that might have resulted in a verdict the other way. So why don't you tell us not why you had evidence to support your claim, but why these aren't errors. I don't think they're errors, Chris. Under even Federal Rules of Evidence 401, 402, 403, when you look at those instances, that information is not relevant to the chief of police position. The information they're trying to bring out did not deal with the position of chief of police. Mayor Hardwick was only authorized to appoint the chief of police. You can't hold decisions made by a five-member board of varying racial makeup against Mayor Hardwick. So if one of the members of the board said, I voted for this person because he was a minority, that wouldn't come in? On the chief of police position, yes. For other positions, no. The plaintiff wanted to get testimony about other positions and what Mayor Hardwick said about other positions when he didn't have the authority to appoint them. But he also wanted to put in testimony about what he said generally, about the racial makeup of people who worked for the town, right? The instance that he's referring to was the general makeup of the town, but there were also denials to that very testimony. Isn't there something in writing somewhere that he said he wanted to make it a rainbow? Now, finally, our workforce looks like the rainbow that our town is or something like that? I don't believe that ever being in a written document signed by Mayor Hardwick, no, Your Honor. I believe there may have been Facebook postings or things of that nature that we don't know exactly the source of that made certain comments. Before you sit down, let me ask you this. Why was any testimony at all about the plaintiff's prior participation in a class action lawsuit relevant here? I think it was absolutely relevant for two reasons. One being, there was a point in the trial where the plaintiff actually started to cry, and Judge Wexler had to stop the proceeding, and he dismissed the jury and asked him to gain his composure. And the testimony that came out in front of the jury was, the basis for him even bringing this lawsuit in some substance was to show to his children that education counts and you fight for what you believe in. Us coming forward and showing he had the exact same type of case 20 years ago went to the credibility, and credibility is absolutely another purpose to be looked at when we're looking at Section 403 of the Federal Rules of Evidence. Additionally, we believe it showed intent, his intent of what was going on here. He brought this lawsuit because the first African-American mayor was elected mayor. If Andrew Hardwick was white, we'd have no case. They didn't have the evidence. They didn't have the means to even elicit the testimony. So the fact of the matter is, it was absolutely relevant because of the testimony they elicited from their client at that point. And I would just point out that it was literally, I believe, five lines, less than 30 words of the entire trial. This case is distinguishable from Otley. Five lines that you brought up in summation with the cry racism argument, right? Not that I brought up in summation, no, Your Honor. Well, counsel . . . But if I could just . . . one minute, Judge Kavanagh. The Otley case, that was character evidence. It violated 403 because they were talking about litigiousness, and it was a central theme in their case. We never brought up the fact that he tried to say that it was his character. That's what he does? Cry racism? That's not bringing up his character? No, no. What's not bringing up his character is the testimony that was elicited before the jury. I'm not going to refer to other counsel's summations, Your Honor. I just don't find it appropriate. Thank you. Mr. Novikoff? May it please the Court. I'm Ken Novikoff. I'm a law firm at Rifkin & Radler. On behalf of Appelli, the former mayor of the Village of Freeport, Mayor Hardwick. For the reasons set forth in Mayor Hardwick's brief and with co-counsel's brief, we believe that there was no basis for this Court to vacate the verdict of the jury that was rendered after an hour and a half, perhaps two hours, and return this case back to the trial court. This was not a close case, I respectfully submit. Appellant tries to hang its entire appeal on the premise that since the first panel said this was a close case, therefore, this was a close case. How could it be a close case when the judge precluded the only evidence that could have come in to prove the plaintiff's case? Well, Your Honor, if the only evidence, and I'll respond to the substance of the evidence, if the only evidence that plaintiff could have put in, because they put in nothing, was a statement by Mayor Hardwick where he said, I would like the Village government to reflect the population of the town because theretofore . . . But it wasn't just that statement. There were written statements about the reasons that he filed a lawsuit so that he could appoint a minority for this position. There were follow-up statements with respect to his desire, once the lawsuit was decided in his favor, that he could appoint a minority. And then there was statistical evidence about the number of minorities he appointed to various positions. Isn't that classic evidence for a plaintiff to put in on a discrimination case? If it was probative and Judge Wexler listened to all of it, he had the entirety of the record before him, he clearly had read the court's opinion because he followed it basically to the letter. But with regard to, for instance, the brother and sister comment, which is one of the pieces of evidence that they're arguing was excluded, and Mr. Corbett was handling that on the brief, but I'll respond to that. He actually had the tape played outside the presence of the jury so that he could see firsthand and be in the best position to view it. And he looked at it, and while appellant counsel says it infers that brothers and sisters must be black, there was nothing on that tape that came close to making that inference. Judge Wexler, sitting at the time as the district court judge trying the case, looked at it and said, no, that's not coming in. And the judge made the same decision on the other evidence. Now, with regard to the statistical evidence, the prior panel, Judge Crane has correctly noted that that evidence showed that it wasn't that Mayor Hardwick and the board, approved the hiring of a disproportionate amount of minorities, and in this case minorities are African-Americans and Hispanics, but it was the reverse, that it was disproportionately Caucasian that were hired by the board. So that evidence wouldn't be probative if it came in. And quite frankly, if it came in, then we'd have a two-and-a-half-week trial, as Your Honor indicated, of a mini-trial on every single decision that came in. Judge Wexler had the universe of facts before him, better than the prior district court judge who had the case for the first time. And he made his considered decision that there was nothing about Plaintiff's case other than his speculation that Mayor Hardwick was a racist. And on the contrary, and looking at the totality of the facts, as I argued to the jury, as Mr. Corbett argued to the jury, if Mr. Hardwick was white, or if Chief Bermudez was white, non-Hispanic, this case would have been thrown out, and it would never have seen the light of day. You had an African-American mayor who was friends with the Hispanic lieutenant for 35 years. There was a litany of facts that if you just took color out of this, you would say to yourself, there is not a doubt why the mayor made the decision that he did. But as Judge Radji pointed out, that's not what the issues are on this appeal. It's not whether you had enough evidence to convince a jury that you were right. It's whether the plaintiff was prevented from putting in evidence, and whether some of the evidence you put in was prejudicial. Can we get to that? Why was the cry racism comment that you made in summation, why was that appropriate? Your Honor, I hit it right on the head. I purposely, I was the attorney, I purposely avoided that. You argued it in summation. Well, I would have argued it regardless, Your Honor. I would have said this was crying racism. The fact that he allowed me because he opened the door to having me read back, and I didn't understand it at the time. I even paused. I even gave him opportunity. I even questioned Judge Wexler to say, do you want me to read this? And Judge Wexler said, yeah, read it. He required me to read that. He's a trial attorney. I'm a trial attorney. But you brought up the class action lawsuit in the first place. Co-defendant did, and I followed up for purposes of credibility. Yes, without question, Your Honor. It was brought up. And I'm still not following why that . . . I mean, I understand that he said he never finished any other than first on any exam that he ever took, and that there's evidence that he didn't, and that that evidence found its way into a lawsuit, but I don't understand how the lawsuit becomes relevant. I understand how the score on the exam might become relevant, but I don't understand how the lawsuit becomes relevant. Well, again, I would agree with co-defendant counsel that Mr. Barella made a big deal about his emotional pain and suffering at the end of his testimony, to the extent that Judge Wexler stopped the trial, removed the jury, and actually didn't tell him to get himself together, actually criticized him for the way he was conducting himself. So, from my standpoint, it went to the credibility of his damage claim, in addition to his overall credibility, because he was testifying inconsistently with regard to his deposition. Once again, I didn't open . . . I didn't put in the crying racism part of the testimony. He made me do it. I did it. And whether I was able to read it or not . . . That record will reflect that you were pointing at Mr. Rooney. Thank you. Rooney made you do it. Well, he allowed me, Your Honor, with all due respect, he allowed me in summation to point to the prior lawsuit as a cry of racism. I was going to say that and make that a point of my summation regardless, because that's how I viewed this case. Thank you, Your Honor. Thank you. Mr. Rooney, you've reserved some time. Yes, Your Honor. About the brothers and sisters comment, we wanted to ask Mayor Hardwick about it when he was on cross-examination. The judge wouldn't let us. In his deposition, he testified that he was referring to African Americans, and that's what it would have reflected as well. And a statement that he wanted to hire a minority police chief is not nothing. It is not no evidence. And what's very, very telling about that statement, why it would have been very crucial to our argument, is that they argued . . . Notice that the mayor did not write in the statement, I need this bill and I filed this lawsuit because I want to hire someone who lived in Freeport. That was one excuse they gave. He didn't say, I want someone who I know. He didn't say, I want someone who was on the fire department with me. All of those things were fairy tales that they made up later. And we would have been able to destroy that if we had had that letter in evidence. And then I think there's a sense, they're sort of minimizing the fact that the mayor made the statement that he wanted a workforce that mirrored the village, and that that's somehow okay. It's not okay. Imagine if the mayor of Garden City, which is 89.6% white, said, I want a workforce that mirrors the village. Could he get or she get away with saying that? Would that not be considered relevant in a discrimination case where that mayor was found to discriminate against someone who's African American or Hispanic? So it's not okay for him to just go around and say, I want a workforce that's two-thirds minority, and do whatever he pleases to get that done, including discriminate against our client. That's all I have, Your Honor. Thanks, Mr. Woody. We'll reserve the decision. We appreciate the arguments of all counsel. Well argued.